CHARLES P. SMITH, APPELLEE, V. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 19, 1916. No. 18602.

Railroads: INJURY TO PEDESTRIANS: CONTRIBUTORY NEGLIGENCE. The duty of a traveler upon a public highway approaching a railroad crossing is to exercise ordinary care. A railroad crossing is a place of danger, and if he goes thereupon without first looking and listening for the approach of a train, without a reasonable excuse therefor, and such failure to look and listen contributes to his injury, he cannot recover.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Reversed and dismissed.*

*W. T. Thompson, Edwin D. Crites* and *F. A. Crites,* for appellant.

*Allen G. Fisher, Earl McDowell* and *William P. Rooney,* contra.

LETTON, J.

This is an action to recover for personal injuries occasioned by the plaintiff being struck by an engine while attempting to cross the track of the defendant at Kennebec, South Dakota, on November 4, 1910. Judgment for plaintiff, defendant appeals.

The plaintiff at the time of the accident was 63 years of age. He had been living near Kennebec, South Dakota, and intended to move to Ardmore, in the same state. A car had been placed upon the side track in which his goods were being loaded. In substance, plaintiff testifies that at that time he was a little hard of hearing, though not as deaf as he was at the time of the trial; that he used an ear trumpet to hear at long distances, but did not use it in carrying on an ordinary conversation, and that he could hear the ringing of bells and the blowing of whistles a distance of a block away if the air was clear. As to the accident, he testified: "Well, I walked from the hotel, and turned upon the sidewalk, and I walked up that way to make the crossing over there, and when I was half way between the hotel and the railway I looked to the east and couldn't see nothing there — couldn't see any train; then I took a few steps more, so I could see by the depot to see if it was clear from the west side, and it was clear over there, and I didn't look back again, but walked right on, and I just stepped over the rail and stepped on the track, and, whiff! — like that; that is all I remember. What happened after that I couldn't tell. Up to that time I knew perfectly well what happened." He further testified that he did not hear any bell rung or whistle blown, nor see any smoke. He was wearing spectacles. His legs were both broken and he was severely and permanently injured. On cross-examination, he testified that it was between 4 and 5 o'clock P. M. when the accident happened; that it was broad daylight; that he was probably 10 or 15 yards from the track when he looked; that there was nothing to obstruct his view from the east, and that he could see a little over a city block and past the next crossing, and

could not see a half mile east because there is a slope to the east. "Q. Well, now, how many rods would you say the coast was clear so you could see if you looked thoroughly and well to the east toward where the train was coming from? A. Seventy or eighty rods, may be." He also said that it was not very cold that day, but it was windy, the wind coming from the north or northwest, but dust was not blowing; that his car was to go out upon the train that struck him, but he did not know when the train was due; that he expected a passenger train first; that he walked upon the sidewalk clear up to the south track where he was struck. He further testified that he was about half way from the hotel to the crossing when he looked; that there were no cars to obstruct his view of the main track, and nothing else, except a few people that might be on the sidewalk. The train records showed that the train arrived at 4:40 P. M., about two hours late.

A number of assignments of error are made, but the only one we think it necessary to consider is that the evidence fails to show that the defendant was guilty of negligence, and that it does show that the plaintiff was guilty of contributory negligence which was the proximate cause of the injury received. It is clearly established that the whistle was sounded at the usual place, but there is a conflict in the testimony with respect to whether the bell was ringing as the train was passing through the yards. There is sufficient testimony to support the finding that it was not rung, and we must assume this fact as established. The engineer's seat was on the north side and the fireman's station was on the south side of the engine, from which latter direction the plaintiff was approaching. The fireman testifies that he was ringing the bell, but says he did not see plaintiff until he was only a few feet from the engine and just about to step upon the track. Other witnesses for the defendant testify that plaintiff was walking rapidly as he approached the railroad. One of them was so impressed by plaintiff's apparent danger that he attempted by running toward him and calling to him to

Smith v. Chicago, M. & St. P. R. Co.

warn him of his peril. Witnesses who were within the
station (which is over 100 feet west of where plaintiff was
struck) with the windows closed heard the whistle and saw
the accident. Others who were to the south and southeast
of the station saw that plaintiff was heading directly
toward the place where he was struck. It would seem that
ordinary care required the fireman to have observed what
so many others saw and to take steps to guard against the
threatened danger. Defendant was guilty of negligence in
this respect and in failing to give proper warning of the
approach of the train.

The scaled plat produced in evidence by the plaintiff
shows the distances between objects and places in several
instances to be different from the estimates made by wit-
nesses, and in giving distances and direction the plat will
be relied upon.

Upon the question whether, as a matter of law, plaintiff
was guilty of contributory negligence sufficient to bar a
recovery, the evidence shows that the plaintiff was walking
rapidly, and, while his speed is not stated more definitely,
it is fair to assume that he was probably moving at the rate
of $3\frac{1}{2}$ miles or 4 miles an hour. Taking the testimony that
the train was going from 6 to 8 miles an hour, as one of
plaintiff's witnesses says, it was moving about twice as
fast as was the plaintiff. The street is at less than a right
angle with the track. Even if at a right angle, when plain-
tiff was 50 feet away from the track the train must have
been 100 feet from the point of the collision, and 111.8 feet
in a straight line from where he was. His view was unob-
structed. If the train was running 10 or 12 miles an hour,
as other witnesses say, the distance would be greater, but
the train would still have been in sight. It seems a phys-
ical impossibility that he could have looked when he said
he did. He must have absent-mindedly kept his eyes or his
thoughts elsewhere, or he must have seen the train in ample
time to have guarded against the danger.

The case is easily distinguishable from *Wallenburg v.
Missouri P. R. Co.,* 86 Neb. 642, upon which plaintiff relies.

In that case there were obstructions on the right of way of the railway so that 50 feet from it an incoming train could only be seen for about 200 feet, though 7 feet from the track it could have been seen for over 500 feet. The train was coasting down grade at an estimated speed of from 35 to 50 miles an hour, and no warning either by whistle or bell was given of its approach. The plaintiff in that case looked and listened about 35 to 37 feet south of the track, and while upon the defendant's right of way. In this case, however, the evidence for the plaintiff shows that, if he had looked to the eastward at the place where he testifies he did, the train would have been in plain sight. He was approaching a dangerous place, as all railroad crossings are, and it was his duty to use ordinary care. His hearing was impaired, and there was therefore the more reason that he should exercise the sense of sight. His condition is deplorable, but we are compelled to the conclusion that he was guilty of such lack of ordinary care for his own safety that he is not entitled to recover. If he had looked at any point in his progress between the hotel and the railroad track, which according to the oral testimony is a distance of about 100 feet, but according to the plat is about 160 feet, he must inevitably have seen the train.

Under these circumstances the verdict of the jury is not supported by the evidence, and the motion of the defendant for a directed verdict should have been sustained. The judgment of the district court is reversed. Since it is apparent that no new and material facts can be produced, and the plaintiff's own testimony does not justify a recovery, the case is dismissed.

REVERSED AND DISMISSED.